Judgment reversed and new trial granted, costs to abide the event.

---

HENRY C. FRECK and CHARLES G. FRECK, Respondents, *v.* WILLIAM B. HUGHES, as Sheriff of Cattaraugus County, and THOMAS R. ALDRICH, Appellants.

*Conversion — title to lumber — when a question for the jury.*

In an action brought against a sheriff for the conversion of lumber sold by him, as he alleged, under an execution against a corporation known as the Standard Lumber Company. the plaintiffs, upon the trial, did not prove the source of their title, but relied upon the presumption of ownership arising from their

possession. It appeared that the plaintiffs had agreed to saw a large quantity of logs for the Allegany Lumber Company, and that while they were engaged in doing so the assets and rights of that lumber company, including the plaintiffs' contract, passed to the Standard Lumber Company, and that thereafter the plaintiffs continued the performance of the contract for the Standard Lumber Company; that while so engaged they purchased of the Standard Lumber Company what remained of the logs unsawed; that at a subsequent date the Standard Lumber Company sold the same logs to the firm of Stewart & Co., and that Stewart & Co. in turn, and upon the same day, sold the identical logs to plaintiffs, who agreed to pay for them the sum of $5,000.

It further appeared that the plaintiffs were present when the lumber alleged to have been manufactured from these logs was sold by the sheriff, and that they did not protest against the sale, but did claim compensation for sawing the lumber.

*Held*, that the questions whether the lumber sold was actually sawed from the logs in suit, and whether, in fact, the plaintiffs ever had any title in the logs or to the resulting lumber, should have been submitted to the jury, and that it was erroneous to direct a verdict for the plaintiffs.

APPEAL by the defendants, William B. Hughes, as sheriff of Cattaraugus county, and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Cattaraugus on the 26th day of February, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the Cattaraugus Circuit, and also from the order of the court directing said judgment.

*Hudson Ansley* and *T. H. Dowd*, for the appellants.

*William H. Henderson*, for the respondents.

LEWIS, J. :

This action was brought against the defendant Hughes, as sheriff of Cattaraugus county, and Thomas R. Aldrich, deputy sheriff, for the conversion by them of some 200,000 feet of hemlock lumber. The defendants interposed an answer to the effect that, on or about the 24th day of March, 1892, the First National Bank of Salamanca commenced an action in the Supreme Court of the State of New York against an incorporated company, known as the Standard Lumber Company, and on that day obtained a warrant of attachment, which was delivered to the defendants, as sheriff and deputy sheriff of Cattaraugus county ; that by virtue thereof they attached a quantity of logs on the twenty-sixth day of said month, and that thereafter

a judgment was recovered in said action against the lumber company and an execution was issued, and that thereafter another action was commenced against said lumber company in favor of Anna M. Stickle and others as plaintiffs, and an attachment in said action was issued to the defendants as sheriff and under sheriff, by virtue of which they attached the said logs, and thereafter a judgment was obtained by the plaintiffs in said action, and an execution was issued; that intermediate the levying of the said attachments and the issuing of the executions, the present plaintiffs, with knowledge that the logs had been so attached, sawed them into lumber; that, by virtue of the executions, the defendants levied upon and sold said lumber as the property of said lumber company. At the close of the evidence a verdict was directed by the court for the plaintiffs for the conceded value of the lumber.

Plaintiffs in making their case did not prove the source of their title to the lumber in question, but relied upon the presumption of ownership arising from their possession.

Upon their cross-examination as witnesses it was made to appear that in the early fall of 1891 they entered into a contract with a corporation known as the Allegany Lumber Company to saw a large quantity of logs into lumber. The logs were lying, at the time of the making of said contract, in and along two streams of water in the town of Red House, Cattaraugus county. One of said streams was known as Quaker run.

Upon this stream the plaintiffs' saw mill was situated. The other stream was known as Stoney brook, which entered into Quaker run a mile or so above the plaintiffs' mill. Plaintiffs entered upon the performance of their contract, and while so engaged the Standard Lumber Company was incorporated and the assets and property of the Allegany Lumber Company, including the contract with the plaintiffs, were transferred to the Standard Company. The plaintiffs thereafter continued the sawing of the logs for the Standard Company under the contract mentioned.

The officers and stockholders of both companies appear to have been the same, and probably the only real change was in the name of the corporation.

The plaintiffs testified that in the latter part of December, 1891, while they were engaged in sawing the logs, they purchased of the

Standard Company what remained of the logs unsawed; that they were, at the time, frozen in the streams mentioned. Not much information was elicited upon the trial as to the terms of this purchase.

The contract of sale was in writing. Plaintiffs' counsel announced upon the trial that he had it in his possession, but did not offer it in evidence, neither did the defendants ask that it be produced.

The defendants introduced evidence showing the commencement of the actions mentioned against the Standard Company, the issuing of the attachments and the levy upon the logs under the first attachment on the 30th of April, 1892. On the 28th day of March, 1892, the Standard Lumber Company made a written bill of sale of these logs to a firm by the name of Stewart & Co., and on the same day, and probably as a part of the same transaction, the plaintiffs purchased these identical logs of Stewart & Co. and agreed, so they testified, to pay therefor the sum of $5,000. No explanation was offered upon the trial by the plaintiffs of these transfers. It did not appear that they expressed any surprise when they were informed that the lumber company had assumed to dispose of property which the plaintiffs now claim they were the owners of at the time. Neither did they in any way account for their agreeing to pay to Stewart & Co. $5,000 for property which as they claimed upon the trial they owned and had possession of. The plaintiffs, after the logs were attached by the defendants, continued to manufacture them into lumber, piling the lumber in separate piles in their mill yard. They pointed out these piles to the defendants as lumber manufactured from the logs which the defendants had attached. The plaintiffs were present at the sale of the lumber by the defendants, and did not, in any manner, protest against it. They did make a claim for compensation for sawing the lumber.

Whether the lumber sold under the execution was manufactured from the same logs that were attached by the defendants was left in some considerable doubt upon the trial. The plaintiff Henry C. Freck, however, did testify that the lumber sold by the defendants came from logs purchased by the plaintiffs of the Standard Lumber Company.

We think there was sufficient evidence tending to identify the logs attached, and that the lumber sold was sawed from them, to make it a question which should have been submitted to the jury. And we think it was a question of so much doubt whether the plain-

tiffs ever had any title to the lumber in question, and whether it was not, in fact, the property of the defendant in the executions, the Standard Lumber Company, as to make that also a question for the jury. The evidence relied upon by the plaintiffs to make their cause of action came from the plaintiffs themselves, who were interested witnesses. The circumstances attending these alleged transfers tended to throw considerable doubt as to their being *bona fide* sales.

It is altogether improbable that the plaintiffs would have recognized Stewart & Co. and consented to pay them for the logs if they, in fact, at the time had any title to them.

While the defendants were somewhat unfortunate in getting their defense before the court, we are of the opinion that there were questions of fact which should have been submitted to the jury.

The judgment should be reversed and a new trial granted, costs to abide the event.

BRADLEY and WARD, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.